ETHEL LITTLES v. THE STATE.

No. 12151. Delivered February 13, 1929.
Rehearing denied State March 20, 1929.

The opinion states the case.

*P. P. Putney, Fly & Ragsdale* and *Ben. W. Fly* of Victoria, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of five years.

From the evidence we learn the following: Charley Littles and his wife, Ethel Littles, negroes, conducted a restaurant. M. H. Ellis, Jr., a youth fourteen years of age, was an employee of Charley Littles. While in the restaurant, Charley Littles received a gunshot wound in the head which killed him. The only witness present besides the appellant was the Ellis boy. He was called and used by the State as a witness. After describing the altercation between the appellant and the deceased, his version of the immediate facts attending the homicide was that in the course of the quarrel the appellant struck the deceased and went to a trunk. The witness at the time had a broom in his hand. Observing his wife opening the trunk, the deceased took the broom from the witness and rushed in the direction of his wife and was shot by her. She fired one shot which felled him to the floor. Upon the arrival of the officers the witness Ellis, in describing the tragedy to them, stated that the deceased had a pistol in his hand and was attacking the witness who, using a broom to protect himself, struck the pistol which accidentally fired and killed the deceased while it was in his hand. That he so described the tragedy was admitted by him upon the witness-stand and proved by the sheriff, who went to the scene of the tragedy soon after it occurred and before the body of the deceased was removed.

The witness Ellis testified that his declarations to the officers were false; that he uttered them at the direction of the appellant; that he made the utterance to the sheriff about thirty minutes after the homicide, and that the appellant told him to do so. By the State's witnesses who arrived soon after the shot was fired it was shown that the appellant was screaming and claiming that Charley had shot himself. The testimony of the witness Ellis classifies him as an accessory. Admittedly, he made false statements to the sheriff relative to the appellant's connection with the homicide in order to aid the appellant to evade arrest or trial or the execution of his sentence, as that language is contained in Art. 77, P. C., 1925. The evidence that would characterize him as an accessory to the homicide, (Blakely v. State, 24 Tex. Crim. App. 622; Gatlin v. State, 40 Tex. Crim. Rep. 118; Caylor v. State, 44 Tex. Crim. Rep. 124) would likewise classify him as an accomplice witness; and Art. 718, C. C. P., 1925, forbidding the conviction of one upon the uncorroborated testimony of an accomplice, would preclude the conviction of the appellant upon

the testimony of Ellis in the absence of corroboration such as is required by the statute mentioned above. Willman v. State, 92 Tex. Crim. Rep. 77; Howard v. State, 92 Tex. Crim. Rep. 221. See also Vernon's Ann. Tex. C. C. P., 1925, Vol. 2, p. 774, note 1; p. 777, note 3; p. 783, note 14; p. 785, note 15. In the present instance, the court refused to instruct the jury upon the subject of accomplice testimony with reference to the witness Ellis, and declined to amend his charge in response to an exception duly made and properly preserved. The appellant's complaint of the action of the court mentioned is deemed sound and of a nature so material as to require a reversal of the judgment.

There are other questions presented, a discussion of which is deemed unnecessary as it is not likely that they will occur upon another trial.

We are precluded from giving consideration to the special charges requested for the reason that the record fails to disclose that they were presented to the trial court before the reading of the charge and before argument as the statute demands. See Art. 659, C. C. P., 1925; also Norman v. State, 91 Tex. Crim. Rep. 486; Harris v. State, 93 Tex. Crim. Rep. 349; Preston v. State, 94 Tex. Crim. Rep. 253; Berlew v. State, 88 Tex. Crim. Rep. 241; Linder v. State, 94 Tex. Crim. Rep. 316.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING, BY STATE.

The State insists that witness Ellis was not and could not be an accessory because, as contended, he was a domestic servant, and under the terms of Art. 78 P. C. such person can not be an accessory. The State cites three cases, Coleman v. State, 44 Tex. 109; Taylor v. State, 41 Tex. 387, and Douglas v. State, 225 S. W. Rep. 536. We have been unable to locate the Taylor case, supra, and neither of the other two authorities support the proposition that Ellis was a domestic servant. In Coleman's case two women were washing and ironing for a family, and on the second day of such employment took a pocketbook with money in it; one kept the money, the other the pocketbook. The latter turned State's evidence. The point was raised by the refusal of the court to instruct for a mitigated penalty sought on the ground that the accused was a domestic servant, the appellate court holding erroneous such refusal. It is interesting to note in the opinion that the other woman—the State witness whose

relationship to the family was exactly that of the accused—is referred to in the opinion as an accomplice. We find no discussion in that case of what is or is not a domestic servant, and the only thing we learn is that our Supreme Court regarded the fact that the women were washing and ironing for a family seemed to require the submission of the issue as to whether they were domestic servants. In the Douglas case, supra, we held the issue of domestic servant not to be raised in a burglary case where the duties of the accused were to sweep, wash and clean windows on the fifth floor of the building, he being charged with burglary of a room on the sixth floor of the same building.

From the statement of facts we learn that the witness Ellis had been working at the restaurant where this killing occurred, some two months. He testified:

"I was waiting tables at that time. I did something else, working around the house sweeping and dusting. That cafe had four rooms on the first floor. . . . While I was working tables, working in the house, I was getting four dollars. From time to time I was hauling wood and waiting tables, and I was getting five. I was hauling wood for Charlie Littles. Part of the time that I was working I was helping haul wood. . . . I live in Bettin's rent house in Victoria, Texas. . . . That is a two story house there. I don't know who lives upstairs, if anyone. They had rooms, I know."

Witness' reference to the two story house was to the restaurant where he worked. We have tried to state all that is in the testimony bearing on the question as to whether Ellis was a domestic servant. He worked in a public restaurant, sometimes he hauled wood, sometimes he swept and dusted in other rooms whose occupance is not stated. Where he slept is not stated, but it is inferred that he slept in another house than the restaurant. In Waterhouse v. State, 21 Texas Crim. App. 663, this court said a domestic servant means a servant who resides in the house with the master he serves, and does not include a servant whose employment is outside. In Richardson v. State, 43 Tex. 456, we said a domestic servant is one who is employed as a house servant or outdoor worker and has general access to the premises. In Ullman v. State, 1 Texas Crim. App. 220, we held substantially as in Waterhouse case, supra. So in Wakefield v. State, 41 Tex. 556, it was held that a domestic servant is one who lives in the house, and does not extend to one whose employment is out-of-door. A gardener, having charge of the garden and sleeping in a house in the garden, was held not a domestic servant. Vaughan

v. Booth, 13 Eng. Law & Eq. 351. So a cook, valet, etc., employed in a public tavern or hotel was held not a domestic servant. Cook v. Dodge, 6 La. Ann. 276. The term "domestic servant" is held to relate to one's home or household employees and would not include a maid in a hotel. Barres v. Hotel Co., 244 S. W. Rep. 308, 196 Ky. 100. These expressions from decisions construing what is meant by a domestic servant, as that term is used in various statutes, seem in substantial accord, and lead us to the conclusion that Ellis, witness in this case, being employed in a public restaurant, which occupation was varied occasionally by hauling wood, and sometimes sweeping and dusting rooms not shown to be occupied by any members of the family, will be held by us to fall outside the pale of such domestic servant.

Nor have we any doubt of the correctness of our holding that one who affirmatively aids in any way another who has committed a crime, to evade arrest or escape prosecution or punishment, is an accessory to such crime; and if in the course of human events he turns against the person so aided and give testimony against him in a criminal judicial proceeding, his testimony should be characterized as that of an accomplice. Ellis did render such aid to this appellant, according to his own admission, purposely telling the authorities after the homicide that same was an accident, caused by the throwing of a broom and the consequent accidental discharge of a pistol.

Believing the matter rightly decided in our original opinion, the motion for rehearing will be overruled.

*Overruled.*